**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

YANZHONG WU,

                Plaintiff,

                -v-                            1:25-CV-1640 (AJB/ML)

CITY OF ALBANY, NEW YORK *et al.*,

                Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

**I.      INTRODUCTION**

On November 24, 2025, *pro se* plaintiff Yanzhong Wu ("plaintiff") filed this 42 U.S.C. § 1983 action against defendants City of Albany, New York (the "City") and various City officials (the "City defendants") alleging that defendants entered his property unlawfully and thereafter issued certain code enforcement orders in violation of City policies.[1]  Dkt. No. 1.  Shortly afterward, plaintiff sought, Dkt. No. 9, and eventually received, Dkt. No. 26, leave to file a supplemental complaint, Dkt. No. 27.

The City defendants have answered.  Dkt. Nos. 8, 30.  However, defendant Chad Haviland ("Haviland"), an employee of the New York State Department of State ("DOS") mentioned for the first time in plaintiff's supplemental complaint, moved to dismiss plaintiff's pleading(s) for failure to state any plausible claims against him.  Dkt. No. 32.

---

[1]  Plaintiff also moved for a preliminary injunction.  Dkt. No. 6.  That motion was fully briefed, Dkt. No. 14, 25, and then denied, Dkt. No. 33.

The motion has been fully briefed, Dkt. Nos. 34, 37, 38, 39, 40, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following factual allegations are taken from plaintiff's pleadings and will be assumed true for the purpose of assessing defendant Haviland's motion to dismiss.

On September 12, 2025, City Code Enforcement Officer Marios Katsanis ("Officer Katsanis") entered plaintiff's fenced-in backyard without consent, notice, a warrant, or other justification. Compl. ¶¶ 8, 14. Thereafter, Officer Katsanis issued a $1,200 Stop Work Order despite a City policy allegedly limiting Stop Work Order fines to $300 for active construction. *Id*. ¶ 15. According to plaintiff, Officer Katsanis and City Code Enforcement Officer Joshua Gold ("Officer Gold") claimed that they did not need consent or a warrant to enter the property. *Id*. ¶¶ 9, 16.

On September 21, 2025, plaintiff reported this misconduct to the Richard LaJoy, the City's Director of Buildings and Regulatory Compliance ("Director LaJoy"). Compl. ¶¶ 10, 17. But Director LaJoy ignored plaintiff's complaints and "demanded additional interior inspections," presumably of the property in question. *See id*. ¶ 17.

On October 20, 2025, Director LaJoy issued a Notice and Order enforcing the Stop Work Order about which plaintiff has complained. Compl. ¶ 18. Plaintiff responded by filing a Notice of Claim, which caused the City's Senior Assistant Corporation Counsel Christopher M. Cech ("Attorney Cech") and the City's Corporation Counsel Robert Magee ("Attorney Magee") to claim that the single Stop Work Order in question was actually four separate Stop Work Orders, and to threaten plaintiff with the issuance of "unlimited new orders." *Id*. ¶¶ 11, 12, 19.

On October 26, 2025, the New York State DOS's Division of Building Standards and Codes acknowledged receipt of plaintiff's complaint and opened Case No. 8372. Supp. Compl. at

1.[2]  However, the next day the DOS "issued a preliminary injunction denying the complaint as outside its scope."  *Id*. at 2.  Plaintiff appealed.  *Id*.  Later, on November 13, 2025, defendant Haviland, in his capacity as Assistant Director of the DOS's relevant division, informed plaintiff that DOS would conduct a further review and issue a determination by November 21, 2025.  *Id*.  However, as of December 15, 2025, DOS had failed to issue the promised determination.  *Id*.

Plaintiff's complaint alleges that this is not the first time that the City defendants have issued improper notices.  Compl. ¶¶ 20–22.  According to plaintiff, between 2021 and 2024 Officer Gold and Officer Katsanis issued "multiple improper and false violation notices" against plaintiff's property and his family's properties.  *Id*. ¶ 20.  And in March of 2021, Officer Gold "selectively cited" plaintiff "for minor gravel placement while multiple neighboring properties had similar or worse conditions without enforcement."  *Id*. ¶ 21.  In plaintiff's view, defendants' conduct "reflects discriminatory animus based on Plaintiff's race (Asian) and national origin (Chinese), combined with retaliation for Plaintiff's complaints."  *Id*. ¶ 22.

## III.   LEGAL STANDARDS

### A.  Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Id*.

---

[2]  Pagination corresponds to ECF headers.  Plaintiff's supplemental complaint is not sequentially numbered by paragraph.

Rule 12(b)(1) motions can be "facial" or "fact-based." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id*. at 56. Under those circumstances, the plaintiff bears no evidentiary burden. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id*. If the defendant identifies "material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id*. However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id*.

### B. Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw

all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

As an initial matter, plaintiff's *pro se* status means that his filings must be held to less stringent standards than pleadings drafted by an attorney.  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As the Second Circuit has repeatedly explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims that they suggest. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).  "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

But plaintiff's unrepresented status does not save his claims from dismissal, at least as against defendant Haviland.  Plaintiff's supplemental complaint alleges that Haviland violated his Fourteenth Amendment rights to procedural due process "by failing to issue the promised determination, creating contradictory procedures, and denying meaningful administrative review." Supp. Compl. at 2.

The applicable federal law is 42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  However, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights secured elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Fourteenth Amendment's Due Process Clause protects procedural and substantive rights. Procedural due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (cleaned up). "To assert a violation of procedural due process rights, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (cleaned up).

Even accounting for his *pro se* status, neither plaintiff's complaint nor his supplemental pleading plausibly allege a procedural due process claim against defendant Haviland. First off, the strong trend in federal practice is to resist the urge to constitutionalize procedural challenges to zoning- or code-related municipal decision-making. To that end, the Second Circuit has held that a land-use plaintiff does not have a protected due process interest in the *procedures* used for making a land-use decision. *See Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995).

Therefore, plaintiff probably does not have a protected due process interest based on what he has complained of here, *i.e.*, that defendant Haviland, in his capacity as Assistant Director of the DOS, is somehow responsible for a deficient *procedure* because the DOS had not yet issued a promised determination on plaintiff's administrative appeal. However, assuming, for present purposes, that some protected due process interest existed in connection with this promised DOS administrative action, "a delay amounts to a due process violation only where it renders the

prescribed procedures meaningless in relation to the private interest at stake." *Kuck v. Danaher*, 600 F.3d 159, 163 (2d Cir. 2010).

There is absolutely no indication that plaintiff has plausibly alleged a claim under this general body of law. To determine the point "at which state procedures become so untimely that they become meaningless" requires a context-driven approach informed by the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Kuck*, 600 F.3d at 163.

Plaintiff has not alleged the kind of unusually lengthy delay (or unusually vital due process interest) that would amount to a plausible claim in this particular context. Indeed, as the Second Circuit has repeatedly acknowledged, "administrative determinations may require a non-trivial amount of time to complete, especially where caseloads are heavy." *Kuck*, 600 F.3d at 163.

Aside from these shortcomings, defendant Haviland points out that the DOS has issued a determination on plaintiff's administrative claim since the filing of his supplemental complaint. According to defendant, that written determination advised plaintiff of his right to challenge the determination in a state-court Article 78 proceeding. Although plaintiff insists otherwise, an Article 78 proceeding "provides the mechanism for challenging a specific decision of a state administrative agency." *Campo v. N.Y. City Emp. Ret. Sys.*, 843 F.3d 96, 101 (2d Cir. 1988).

Where, as here, a state-court Article 78 proceeding is available to meaningfully challenge an administrative determination, a plaintiff cannot state a § 1983 procedural due process claim. *See, e.g.*, *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 428 (E.D.N.Y. 2021) (collecting cases). After all, "[i]t is process that the procedural due process right protects, not the outcome." *Caplash v. Johnson*, 230 F. Supp. 3d 128, 142 (W.D.N.Y. 2017); *see also Proctor v. LeClaire*, 846 F.3d 597, 612 (2d Cir. 2017) ("The Due Process Clause . . . commands a process, not a particular result.").

There is no indication in either pleading that plaintiff has been deprived of any protected due process interest with respect to defendant Haviland.  In light of plaintiff's *pro se* status, the Court has also independently reviewed plaintiff's pleadings and other filings in an effort to determine whether plaintiff might have some other kind of actionable § 1983 claim against defendant Haviland based on his conduct vis-à-vis the DOS administrative determination.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998).

This review confirms that he does not.  Plaintiff has already filed a supplemental pleading and engaged in a round of briefing with respect to defendant Haviland.  There is no indication in any of these filings that he could state a plausible § 1983 claim based on Haviland's extremely limited involvement in the events about which he has complained.  Although the general rule is that leave to amend should by freely given to a *pro se* litigant, *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000), it is unwarranted where, as here, further amendment appears unlikely to be productive, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Finally, in his supplemental complaint, plaintiff also alleges that the DOS's "contradictory actions and inability to issue determinations" amount to a viable claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  *See* Suppl. Compl. at 2.  This claim fails for at least two reasons.  First, absent an underlying claim against defendant Haviland, any *Monell* claim based on his alleged misconduct would necessarily fail.  *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Second, because the DOS is a state agency entitled to Eleventh Amendment immunity, it cannot be validly sued under *Monell*, either.  *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62–71 (1989).  Accordingly, plaintiff's claims against defendant Haviland must be dismissed without leave to amend.

- 9 -

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Defendant Chad Haviland's motion to dismiss (Dkt. No.32) is GRANTED; and

2.  Plaintiff's claims against defendant Haviland are DISMISSED without leave to amend.

The Clerk of the Court is directed to terminate the pending motion.

**IT IS SO ORDERED.**

Dated:  April 24, 2026
      Utica, New York.

Anthony J. Brindisi
U.S. District Judge